CITY OF DAYTON, State of Ohio, Appellee,

v.

DAVIS, Appellant.

[Cite as *Dayton v. Davis* (1999), 136 Ohio App.3d 26.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17507.

Decided Nov. 24, 1999.

*Mary E. Welsh*, Assistant City Prosecutor, for appellee.

*William D. Rohrkaste*, for appellant.

---

FREDERICK N. YOUNG, Judge.

Defendant–appellant, Gilbert A. Davis, appeals his convictions on one count of menacing by stalking in violation of R.C. 2903.211, and one count of aggravated menacing in violation of R.C.G.O. 135.05(A).[1] In his sole assignment of error, he claims both convictions were unsupported by sufficient evidence and against the manifest weight of the evidence. We affirm.

According to the evidence presented by the prosecution, the defense having presented none, the events culminating in Davis's convictions have their genesis in 1996, when he was a second-year law student at the University of Dayton School of Law ("UDSL"). In October of that year, he began dating a first-year law student, Johanna Barba, in spite of the fact that he was married and living with his wife and son at the time. According to the evidence produced at trial, Barba and Davis's relationship continued until the beginning of December 1997, at which time Davis demanded that Barba either cease studying with her classmate, Dan Perrico, or end her relationship with Davis. Barba chose to do the latter, then left the Dayton area over the winter break from school. While away, she was able to access her e-mail account provided to all students at UDSL. She received an unknown number of e-mails from Davis in which he stated he was starving himself to death and described the pain he would suffer in the process of doing so.

Upon her return to UDSL, Davis apologized profusely amid tears, and begged Barba to give him another chance, promising that he would be less controlling and more supportive of her academic endeavors. The relationship resumed, but after approximately one month, Barba determined that its quality was no different than before, and she told Davis it was over. Shortly thereafter, on the night of February 22 or the early morning hours of February 23, 1998, Davis attempted suicide by ingesting a combination of alcohol and drugs.

In the days, weeks, and months following his suicide attempt, Davis sent Barba numerous e-mails telling her that he had been researching her home town in New Jersey and regularly spending time in a park near Barba's apartment. Near the

---

1. In his brief, Davis claims his conviction on the aggravated menacing count was pursuant to R.C. 2903.21, which is incorrect. Instead, charges were brought and he was convicted under R.C. 2903.211 and R.C.G.O. 135.05(A). In all relevant respects, the two provisions are identical, however, and we will consider Davis's arguments as if he had cited the correct code and section.

end of April 1998, Davis also sent e-mails to Barba's parents in New Jersey, and a friend of Barba's at UDSL, Susan Branstetter. No explicit threats of harm to Barba were made in any of the e-mails, but Davis's tone in them fluctuated between despair over the break-up, anger, threats to commit suicide, a desire to see Barba in pain, and blaming Barba for ruining Davis's life. Davis also included in his e-mails to Barba details of her television viewing and social activities, which he could only have known by watching her, and a link to a web site he had created. Davis stated he was willing to make the details of his relationship with Barba public at UDSL in order to, as he put it, get his side of the story out.

The e-mail messages Davis sent to Barba put her in such fear for her safety that she changed her phone number and gave her new number only to her closest friends with a plea that they not give it to anyone else. She took to pushing her dresser across her door when she went to sleep and kept pepper spray by her bed. Barba also had motion detectors installed in her apartment and developed the habit of calling her friend, Branstetter, to let her know when she was coming and going from her apartment, in case anything should happen to her. In addition, she contacted either the University of Dayton Police Department ("UD police") or the Kettering Police Department numerous times concerning Davis's e-mails and an incident where he apparently came to Barba's apartment to leave a ring on her door. In March 1998, the police warned Davis to stay away from Barba's apartment, and on April 8, 1998, Barba filed a complaint with the UD police.

Davis's web page, which he created under the name "Gadbuddhaa," portrayed, among other things, the image of Barba's head transforming into a skull amidst flames, dripping blood, and charging horses ridden by robed skeletons. Interspersed with these images were quotations from the Bible and other sources in which the common theme was love, death, and destruction. On another web page, Davis had posted pictures of Barba's home town in New Jersey, although when questioned by UD police officer Harry Sweigart, Davis denied ever having been to the town.

Barba accessed Davis's web site on April 10, 1998, after having heard about its contents from her friends at UDSL. Recalling instances where Davis had described violent acts he had been involved in, his penchant for pointing out where television criminals had gone wrong in the commission of their crimes, and the timbre of his e-mails, Barba was convinced after viewing the web site that Davis was going to kill her. To her, the web site was a manifestation of a violent ideation against her rather than the suicidal thoughts Davis had previously exhibited. Branstetter and UDSL Professor Thomas Hagel noticed that Barba

was frightened, unnerved, and appeared to be a terrorized person during the spring of 1998.

Soon after viewing Davis's web site, Barba moved into a hotel because of her fear of Davis. She remained there until she had completed her final examinations at UDSL in May, then immediately departed for New Jersey to complete her law school education there.

As a result of the complaint filed by Barba with the UD police, Davis was charged with three counts of aggravated menacing in violation of R.C.G.O. 135.05(A), three counts of menacing by stalking in violation of R.C. 2903.211, and eight counts of telephone harassment in violation of R.C.G.O. 137.03(B). The prosecutor subsequently dismissed all but one count of aggravated menacing, one count of menacing by stalking, and three counts of telephone harassment. At the close of the prosecution's case in chief, the trial court granted Davis's Crim.R. 29 motion on the telephone harassment counts, but denied it as to the other counts. Thus, only one count of aggravated menacing and one count of menacing by stalking went to the jury, which returned guilty verdicts on both counts. On October 20, 1998, the trial court sentenced Davis to a term of one hundred eighty days on each count, to be served consecutively at the Dayton Human Rehabilitation Center. The same day, Davis filed his timely notice of appeal and requested that he be permitted to post bond pending appeal, and the trial court granted his request.

Davis presents two arguments in his sole assignment of error, which is set forth as follows:

"The trial court erred in denying defendant–appellant's motion for acquittal made pursuant to Crim.R. 29, in that the verdict of the jury was based on insufficient evidence and was against the manifeist [sic] weight of the evidence."

■ In his first argument under his assigned error, Davis contends the trial court erred by overruling his Crim.R. 29 motion for acquittal as to the aggravated menacing and menacing by stalking convictions because they were unsupported by sufficient evidence. The Ohio Supreme Court has recently addressed the legal concept of the sufficiency of evidence. In *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546, the court noted that " ' "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' " *Id.* quoting Black's Law Dictionary (6 Ed.1990) 1433. A reviewing court inquires "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Thus, the test for sufficiency of the evidence is one of adequacy. *Thompkins* at 386, 678 N.E.2d at 546.

R.C.G.O. 135.05(A) states that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of such other person or member of his immediate family." Davis claims that the evidence produced at trial was insufficient to support his conviction under that provision because the e-mails sent to Barba by Davis contained no explicit or direct threats of harm, and because Davis was neither armed nor in close proximity to Barba when she read the e-mails and viewed his web site. None of these circumstances are required for a conviction under R.C.G.O. 135.05(A), however. Cf. *Dayton v. Dunnigan* (1995), 103 Ohio App.3d 67, 71, 658 N.E.2d 806, 808 (stating the offender's intent or ability to carry out a threat is not an element of aggravated menacing under R.C. 2903.21[A], which is comparable to R.C.G.O. 135.05[A] ); *State v. Schwartz* (1991), 77 Ohio App.3d 484, 486, 602 N.E.2d 671, 673 (finding conviction under R.C. 2903.21[A] appropriate even though offender made no attempt to carry out threat); *State v. Smith* (1998), 126 Ohio App.3d 193, 709 N.E.2d 1245 (noting that explicit threats are not an element of menacing by stalking).

The record before us leaves little doubt that Barba genuinely believed Davis was going to kill her or cause serious physical harm to her. She took extreme measures to protect herself as a result, ultimately leaving UDSL and the state to get away from him. His statement in his e-mail of March 19, 1998, to the effect that he was glad to see her in pain, while falling short of constituting an explicit threat, evidenced his desire to see her suffer. Davis's increasingly angry tone in the later e-mails, his blaming Barba for ruining his life, in combination with the horrifying web site images of Barba's head metamorphosing into a skull provide fertile ground for the germination and growth of Barba's fear of serious physical harm at the hands of Davis. Consequently, we find Davis's conviction under R.C.G.O. 135.05(A) to be supported by sufficient evidence.

Davis also claims his conviction on the menacing by stalking count is insufficiently supported by the evidence. The relevant statute, R.C. 2903.211, provides as follows:

"(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.

" * * *

"(C) As used in this section:

"(1) 'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents.

"(2) 'Mental distress' means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment."

Davis argues that the evidence produced at trial was insufficient to support a finding that he engaged in a pattern of conduct or made explicit threats to Barba, that Barba suffered mental distress, or that Barba was aware of any threatening thoughts Davis may have harbored toward her. We disagree.

Davis presumes in his argument that his posting of the gruesome web page, constituting one act, is insufficient evidence of a pattern of conduct. What he overlooks, however, is the evidence that he surreptitiously watched Barba then communicated to her via e-mail his knowledge of what television programs she watched and her social activities, that he visited her apartment and left a ring on her door on one occasion, and that he let her know he spent a considerable amount of time at the park near her house. Thus, while we agree with Davis's statement of the law respecting the requirement that a pattern of conduct be composed of more than one act, we find it to be inconclusive on the issue he raises. The evidence produced at trial was sufficient to support the jury's finding that Davis engaged in a pattern of conduct as that term is defined in R.C. 2903.211(C)(1).

Next, Davis contends that the evidence insufficiently supported a finding that Barba suffered mental distress as a result of his conduct. A showing of actual mental distress is not an element of menacing by stalking, however. Instead, the prosecution need only show that Davis knowingly caused Barba to believe he would cause her mental distress or physical harm, which, in our view, was sufficiently accomplished at trial to support Davis's conviction for menacing by stalking.

In his last argument relating to the sufficiency of the evidence, Davis claims his conviction for menacing by stalking was insufficiently supported by the evidence because he never directly communicated an explicit threat to Barba. He also contends that any thoughts he had of threatening or harming her, having never been communicated, cannot support his conviction.

We note again, however, that explicit threats are not an element of menacing by stalking. *Smith, supra.* Furthermore, Davis's frequent communications expressing his desire to see Barba in pain, his increasingly vituperative tone in his e-mails to Barba, and the grotesque web site allow an easy conclusion that Davis knowingly caused Barba to believe he would cause her mental distress or

physical harm. Thus, we find Davis's conviction for menacing by stalking sufficiently supported by the evidence.

Having determined that both of Davis's convictions are supported by sufficient evidence, we find no error in the trial court's failure to grant his Crim.R. 29 motion for acquittal on those counts.

Davis also claims in his sole assignment of error that his convictions are against the manifest weight of the evidence. The only reference to the manifest weight of the evidence in his argument, however, is in his discussion of the different standards of review relevant to manifest weight and sufficiency of the evidence challenges. Thus, because he makes no argument that his conviction was against the manifest weight of the evidence, we have no need to consider his claim that it is so. App.R. 12(A)(2); App.R. 16(A)(7).

Davis's sole assignment of error is overruled. Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BROGAN and FAIN, JJ., concur.