OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Diane C. Tuuri, appeals from a final judgment of the Geauga County Court of Common Pleas denying her a stalking civil protection order against appellee, Richard E. Snyder. For the reasons that follow, we reverse the judgment of the trial court and remand the matter so that the trial court can enter judgment in favor of appellant.
On July 25, 2000, appellant filed a petition for a stalking civil protection order pursuant to R.C. 2903.214. In her petition, appellant claimed that appellee, her former husband, had continuously threatened and harassed her since filing for divorce in 1997. Specifically, appellant alleged that appellee had committed the following acts over the course of the past two years: (1) entered the marital residence on June 10, 1998, in violation of a prior restraining order; (2) forcefully entered the marital residence and removed various items of personal property on May 5, 2000; (3) threatened appellant that he would come to the home any time he wished and take anything he wanted; and (4) told appellant "that she would pay for what she has done[.]" Based on this conduct, appellant maintained in her petition that she was afraid appellee would physically harm her because his threats had escalated and his behavior had become more urgent and violent.
Following an ex parte hearing, appellant was granted an ex parte
stalking civil protection order, and the matter was set for a full hearing before a magistrate on August 8, 2000. During this hearing, both appellant and appellee were represented by counsel and testified on their own behalf.
On August 15, 2000, the magistrate issued a decision in which he concluded that appellant had failed to present evidence warranting a stalking civil protection order. As a result, the magistrate recommended that appellant's petition should be denied, and that the previously entered ex parte order should be vacated
Appellant filed a motion for an extension of time to submit her objections to the magistrate's decision so that the transcript of the hearing could be reviewed. However, upon receipt of the transcript, appellant discovered that appellee's testimony could not be transcribed because it had not been recorded during the hearing. As a result, the trial court ordered both parties to prepare a statement of the evidence.
On October 13, 2000, appellant filed her objections to the magistrate's decision. After considering the parties' proposed statements of the evidence, the magistrate subsequently filed a partial settlement and approval of the record on November 27, 2000. On the same day, the trial court issued a judgment entry adopting the August 15, 2000 magistrate's decision. In doing so, the trial court found that although appellee admittedly violated the restraining order when he entered the marital residence, the two incidents were not closely related in time, and that appellee's "childish phone calls" did not constitute conduct which would knowingly cause appellant to believe he would cause her physical harm. Moreover, the trial court also found that appellant's "mental distress" stemming from appellee's actions fell "substantially short of the definition of mental distress per the statute." Accordingly, the trial court denied appellant's petition and vacated the previously entered exparte order.
From this decision, appellant filed a timely notice of appeal with this court. In her first assignment of error, appellant argues that the trial court abused its discretion when it denied her petition for a stalking civil protection order. Appellant contends that she proved, by a preponderance of the evidence, that appellee knowingly engaged in a pattern of conduct that led her to believe he would cause her physical harm or mental distress.
R.C. 2903.214, which governs the issuance of stalking civil protection orders, provides in relevant part:
 "(C) A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court. The petition shall contain or state both of the following:
 "(1) An allegation that the respondent engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order, including a description of the nature and extent of the violation;
"(2) A request for relief under this section."
As the petitioner, appellant had the burden of proving, by a preponderance of the evidence, that she was entitled to a stalking civil protection order.[1] However, the decision whether or not to grant such an order is well within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. Williams v. McDougal
(May 16, 2001), Gallia App. No. 00CA014, unreported, 2001 Ohio App. LEXIS 2300, at 4. An abuse of discretion connotes more than a mere error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Moreover, it is well-established that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. As the trier of fact is in the best position to view the witnesses and their demeanor, in making a determination that a judgment is against the manifest weight of the evidence, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact.Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7, 10; Gerijo, Inc. v.Fairfield (1994), 70 Ohio St.3d 223, 226.
In other words, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court findings." State ex rel.Celebrezze v. Environmental Enterprises, Inc. (1990), 53 Ohio St.3d 147,154. Thus, in the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment. Gerijo at 226; Karches v. Cincinnati
(1988), 38 Ohio St.3d 12, 19.
As we noted earlier, to be entitled to a stalking civil protection order, the petitioner must show, by a preponderance of the evidence, that the respondent engaged in a violation of R.C. 2903.211, the menacing by stalking statute, against the person seeking the order. R.C. 2903.211(A) states that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."
At the hearing, appellant provided a significant amount of evidence showing that a number of incidents took place between June 1998, the first time appellee violated the restraining order, and July 2000, the last time, according to appellant, the parties spoke on the phone before the August 8, 2000 hearing. Moreover, the trial court found most of appellant's allegations to be credible. Nevertheless, the trial court concluded that even though appellee entered the marital residence in violation of a valid restraining order, and had called appellant on several occasions, this conduct was insufficient to cause appellant to believe that appellee would cause her physical harm. Moreover, the court also concluded that appellant's "mental distress," i.e., a problem with sleeping, fell "substantially short of the definition of mental distress per the statute." For the following reasons, we disagree.
"Pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). We agree with the trial court that the two times appellee entered the marital residence were not closely related in time. However, the undisputed circumstances of these entries were extraordinary. The first time, appellee entered the marital residence through a partially open sliding glass door, despite the existence of a restraining order, while in the second instance, appellee entered the home by drilling through the deadbolt on the door leading from the garage to the house.
Furthermore, these were not the only instances in which appellee acted inappropriately. This is important because when looking at the pattern of conduct in this case, one must take into consideration everything; i.e., the forcible entries, the phone calls, the thinly veiled threats, and the face-to-face meetings between the parties, "even if some of his actions comprising this behavior, considered in isolation, might not appear to be particularly threatening." Still v. Still (Apr. 23, 1999), Montgomery App. No. 17416, unreported, 1999 Ohio App. LEXIS 1808, at 5. When this is done, it is obvious that appellee's actions continued fairly consistently over the course of approximately two years.
In addition, the trial court, from its own perspective, found appellee's actions to be "idiotic" and "childish." However, in determining whether or not to grant a stalking civil protection order, the trial court needs to view the actions with respect to their effect on the petitioner. Appellant did not have to prove that appellee knowinglycaused her physical harm or mental distress. State v. Smith (1998),126 Ohio App.3d 193, 202 (holding that explicit threats are not necessary to establish any essential element of menacing by stalking under R.C.2903.211(A)). Instead, appellant only had to show that appellee knowingly committed certain acts, and that from his actions, she believed appellee was going to cause her physical harm or mental distress. Id.
That being said, the record before us clearly shows that appellant had a reasonable belief that appellee was going to cause her physical harm. She asked for and received an earlier restraining order against appellee preventing him entering the marital residence and from threatening, abusing, annoying, harassing, or having contact with her, and appellant filed several police reports concerning disputes between the parties.
In addition, appellant testified to the following during the hearing:
 "I'm terrified that this man won't stop. That he has no respect for any authority, any policeman, any judge who has ever told him he couldn't do something. I don't know why he's that way. I know that he had been in therapy and he was on medications for several years. I don't know his mental state now, or whether that affects how he is acting. But I feel very vulnerable because he continually does whatever he pleases.
"* * *
 "I think that he has progressively increased the violence with which he's invading my privacy, my space, the threats. I think he's quite capable of deciding it would be easier to not have me around. I think that he has had guns. He's used them in a way that's very threatening. Rather than agree that it's probably not good to have firearms around during the divorce, he, in fact, tried to have me arrested for giving the gun to the police.
 "I have to live constantly watching where and when and how I go about my business. I chain my garage door. I leave the house for an overnight and I have to have a car parked in the driveway. It's not a normal way to live, but he's not behaving normally. And I think that he's quite capable of hurting me."
The fact that the parties have plagued the court with their numerous disputes during their divorce does not justify the conclusion that they deserve each other. Breaking and entering on two occasions within a two-year period, coupled with thinly veiled threats, telephone harassment, and an apparent disregard for the legal process is not chopped chicken liver. Simply stated, appellant's claim that she was afraid of appellee is well supported by those facts found to be credible by the trial court. And while the credibility of the witnesses is an issue for the trier of fact to determine, nothing in the trial court's judgment suggests that the court found appellant's testimony to be anything but credible. In fact, quite the opposite is true because, as we noted earlier, the trial court actually found the vast majority of appellant's testimony to be accurate.
Turning to the second prong under the menacing by stalking statute, "mental distress" is defined as "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C.2903.211(D)(2). However, a showing of actual mental distress in not arequired element of menacing by stalking. Dayton v. Davis (1999),136 Ohio App.3d 26, 32. That is, all that has to be shown is that appellee knowingly caused appellant to believe he would cause her mental distress or physical harm. Id. See, also, Lindsay, 2000 Ohio App. LEXIS 4043, at 14 (holding that R.C. 2903.211 contains two independent prongs whereby a person is guilty of menacing by stalking if he knowingly caused mental distress to another, or if he knowingly caused another to believe that he would cause the person physical harm). Given this, even if appellant failed to prove that appellee's actions caused her to suffer "mental distress," appellant's evidence still satisfied R.C. 2903.211(A).
It is important to remember that appellant only had to prove, by apreponderance of the evidence, that appellee engaged in a violation of R.C. 2903.211. Accordingly, even after indulging every reasonable presumption in favor of the trial court's judgment and findings of fact, this court concludes that the trial court abused its discretion when it denied appellant's petition for a stalking civil protection order.
Based on the foregoing analysis, appellant's first assignment of error has merit. Our disposition of this assignment renders any analysis with respect to the second and third assignments of error moot. Accordingly, the judgment of the trial court is reversed, and the matter is remanded so that the trial court can enter judgment in favor of appellant.
FORD, P.J., dissents with Dissenting Opinion, GRENDELL, J., concurs.
[1] We note that R.C. 2903.214 is silent with respect to the burden of proof that a petitioner must meet before a stalking civil protection order will be issued. However, the Supreme Court of Ohio has held in a similar situation that when granting a civil protection order pursuant to R.C.3113.31, "the trial court must find that petitioner has shown by apreponderance of the evidence that petitioner * * * [is] in danger of domestic violence." (Emphasis added.) Felton v. Felton (1997),79 Ohio St.3d 34, paragraph two of the syllabus. After looking at R.C.3113.31, we believe the same logic would be applicable to a stalking civil protection order issued under R.C. 2903.214. See, also, Lindsay v.Jackson (Sept. 8, 2000), Hamilton App. No. C-990786, unreported, 2000 Ohio App. LEXIS 4043, at 12-13.