OPINION
{¶ 1} Respondent-Appellant, David Shumate, appeals a Marion County Common Pleas Court judgment granting Petitioner-Appellee, Clifford Luikart ("Appellee"), an anti-stalking civil protection order ("CPO") against Shumate. On appeal, Shumate contends that issuance of the CPO was not supported by a preponderance of the evidence. We find the record contains competent, credible evidence supporting the trial court's determination that Shumate, while engaging in a pattern of conduct, knowingly caused Appellee to believe he would cause him mental distress or physical harm; however, no evidence was presented showing any pattern of conduct by Shumate against Appellee's wife or children. Thus, we affirm the decision of the trial court, in part, and reverse in part.
 {¶ 2} Appellee and Teresa Luikart were divorced with two children being born as issue of the marriage. After the marriage was dissolved, Appellee was designated residential parent, and Teresa was afforded visitation with the children every Saturday from 10:00 a.m. until 6:00 p.m. Pursuant to the custody determination, Teresa's boyfriend, David Shumate, was ordered to have no contact with the children. Apparently, friction began between Appellee and Shumate as a result of the ongoing domestic proceedings between Appellee and Teresa.
 {¶ 3} On October 7, 2002, while attending court proceedings concerning a contempt motion filed against Teresa for failure to pay child support, Appellee was verbally threatened by Shumate. Appellee testified that Shumate stated that he was going to "kick [Appellee's] ass" in the parking lot of the court, resulting in Appellee's wife requesting the sheriff to escort them to their car in order to avoid further conflict.
 {¶ 4} Thereafter, on October 25, 2002, Appellee was stopped at a red light when he observed Shumate exit a vehicle two cars behind his. Shumate approached Appellee's vehicle, kicked the passenger side door, told Appellee that he was going to kill him, and again verbalized that he would "kick [Appellee's] ass." Appellee then exited his vehicle and notified the police of the incident on his cell phone. Following this, both men were cited for misdemeanor disorderly conduct.
 {¶ 5} In response to Shumate's conduct, Appellee filed a petition for a CPO, on behalf of himself, his wife, and his children, against Shumate. At the hearing on the petition, Appellee testified that he was afraid Shumate would cause him immediate physical harm and that he felt threatened during both confrontations between the two men. Appellee further stated that Shumate's demeanor also made him fear for his children's safety, although the children were not present during either incident.
 {¶ 6} Based upon the foregoing, the trial court granted Appellee's petition, and a one year CPO was issued. Pursuant to the order, Shumate is to refrain from contact with Appellee and Appellee's wife and children. From this decision, Shumate appeals, asserting a single assignment of error for our review.
Assignment of Error I
 The trial court erred in granting Petitioner-Appellee a one (1) year Civil Stalking Protection Order.
 {¶ 7} At the outset, we note that an appellate court review of a CPO is only on an abuse of discretion standard.[1] An abuse of discretion implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable.[2] If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion.[3]
 {¶ 8} We now turn to the applicable law governing the issuance of a CPO. Ohio's menacing by stalking statute, R.C. 2903.211(A), provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." A pattern of conduct is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."[4] Additionally, one incident is not sufficient to establish a "pattern of conduct."[5] R.C.2903.211(C)(2) defines mental distress as "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." However, a showing of actual mental distress is not a required element of menacing by stalking; a petitioner only needs to establish that the respondent knowingly caused him to believe that mental distress or physical harm would result.[6]
 {¶ 9} Pursuant to R.C. 2903.214, a person may seek civil relief against an alleged stalker by filing a petition containing "[a]n allegation that the respondent engaged in a violation of section 2903.211
of the Revised Code against the person to be protected by the protection order, including a description of the nature and extent of the violation."[7] R.C. 2903.214(E)(1) further states:
 [a]fter an ex parte or full hearing, the court may issue any protection order, with or without bond, that contains terms designed to ensure the safety and protection of the person to be protected by the protection order, including, but not limited to, a requirement that the respondent refrain from entering the residence, school, business, or place of employment of the petitioner or family or household member.
 In order to obtain a CPO, the petitioner must establish by a preponderance of the evidence that the respondent has engaged in a violation of R.C. 2903.211, menacing by stalking.[8]
 {¶ 10} Upon review of the record, we find that there was sufficient evidence for the court to have found that Shumate, while engaging in a pattern of conduct, knowingly caused Appellee to believe he would cause him mental distress or physical harm. Shumate did not deny the occurrence of the two confrontational incidents on October 7 and 25, 2002. Additionally, Appellee testified that during both confrontations he felt threatened and believed Shumate would cause him physical harm. While Shumate contests whether Appellee believed mental distress or physical harm would result, this is a credibility determination reserved to the trial court.[9] Because competent, credible evidence supports the trial court's decision, we are unable to find that issuing the CPO was unreasonable pursuant to R.C. 2903.211 and R.C. 2903.214 with regards to Appellee.
 {¶ 11} However, Shumate further argues that no evidence supported issuing a CPO for the protection of Appellee's wife and children. We agree. No evidence at the hearing was presented showing any pattern of conduct by Shumate against Appellee's wife or children.[10] Further, the CPO prohibiting Shumate from having contact with Appellee, should adequately protect Appellee's wife and the children while they are with him. Appellee's children, when they are with Teresa, are further protected from Shumate pursuant to the domestic relations custody determination between them. Because no evidence was presented to establish the need for a CPO protecting Appellee's wife and children, we sustain Shumate's assignment of error in this regard.
 {¶ 12} Having found error prejudicial to Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed insofar as it relates to Appellee, and reversed insofar as it relates to Appellee's wife and children, and the matter is remanded for further proceedings in accordance with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
 SHAW and CUPP, JJ., concur.
[1] Kramer v. Kramer (Aug. 27, 2002), Seneca App. No. 13-02-03,2002-Ohio-4383, at ¶ 11, citing Mottice v. Kirkpatrick (Dec. 27, 2001), Stark App. No. 2001CA00103, 2001-Ohio-7042.
[2] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[3] Kramer, supra, at ¶ 11, citing Ross v. Ross (1980),64 Ohio St.2d 203.
[4] R.C. 2903.211(A)(1).
[5] Kramer, supra, at ¶ 15, citing State v. Scruggs (2000),136 Ohio App.3d 631; Dayton v. Davis (1999), 136 Ohio App.3d 26.
[6] Striff v. Striff (Feb. 21, 2003), Wood App. No. WD-02-031,2003-Ohio-794, at ¶ 11, citing Dayton 136 Ohio App.3d at 32.
[7] R.C. 2903.214(C) (emphasis added).
[8] Kramer, supra, at ¶ 14. See, also, Lindsay v. Jackson (Sept. 8, 2000), Hamilton App. Nos. C-990786, A-9905306; Huffer v. Chafin (Jan. 28, 2002), Licking App. No. 01 CA 74, 2002-Ohio-356; Tuuri v. Snyder
(Apr. 30, 2002), Geauga App. No. 2000-G-2325, 2002-Ohio-2107, at ¶ 12.
[9] State v. Meyers (2001), 146 Ohio App.3d 563, 574, 2001-Ohio-2282, at ¶ 26; First Bank of Marietta v. Roslovic Partners, Inc.
(2000), 138 Ohio App.3d 533, 538; Gerijo, Inc. v. Fairfield (1994),70 Ohio St.3d 223, 226.
[10] See Spence v. Herbert (July 30, 2001), Licking App. No. 00CA93.