DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Jon E. Hart, appeals the judgment of the Ottawa County Court of Common Pleas granting appellee, Christine L. Gruber, a stalking civil protection order ("SCPO"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On September 21, 2005, appellee filed a petition for a SCPO pursuant to R.C. 2903.214 in the Ottawa County Court of Common Pleas. An ex parte civil protection order was issued that day. A trial court magistrate heard the matter on September 29, 2005. At that hearing, testimony was submitted as follows. *Page 2 
 {¶ 3} Appellant met appellee sometime during August 2005, when appellant's training officer in the Genoa police force introduced him to appellee at her home. At that time, appellee welcomed appellant to the town and extended a general invitation to appellant to stop by her home and say hello. Between that initial meeting and the filing of the petition, there were at least five contacts between appellant and appellee, which led to the petition for a SCPO.
 {¶ 4} Appellant went to appellee's home on September 3, 2005, to respond to a neighbor's barking dog complaint. Appellant found appellee and her female friend playing cards in the garage, and stayed for at least an hour to visit with the women after investigating the dog complaint. Appellant was still on duty, in uniform, and armed. In the course of conversation, appellant made sexual comments to appellee and her friend. After the friend left, appellant grabbed appellee by the arms and forcibly kissed her, leaving red marks on her arms.
 {¶ 5} The next day, appellant, while on duty, in uniform, and armed, visited appellee three times at her home for social reasons. The first time, appellant shone a light into appellee's home from his police car. Appellee remained in her house and spoke to him through her bathroom window. Appellant left, but returned shortly afterward and again spoke to appellee and her friend through the bathroom window. The women told him they were busy dyeing their hair, and he left again. About two hours later, appellant returned and approached appellee and the same friend in the garage. The women immediately went inside the house, telling appellant they were going to bed. *Page 3 
 {¶ 6} The next contact between appellant and appellee occurred on September 14, 2005, in the Genoa Subway restaurant. Appellee was ordering lunch, when appellant approached her and invited her to eat with him. Appellant was on duty, in uniform, and armed, and told appellee he was there to stake out a business near the restaurant. Appellee testified that she ate lunch with appellant unwillingly.
 {¶ 7} The final contact between appellant and appellee took place on September 15, 2005, in the parking lot of Miller's grocery store. Appellee noticed a pickup truck following her as she drove around the lot looking for a parking space. When the pickup truck pulled alongside appellee's car, she saw appellant in the driver's seat, wearing his police uniform. The two had a brief conversation, which ended when appellee's friend came out of the store and got into the car. Appellee then drove away.
 {¶ 8} In addition to the direct contact, appellee testified she was afraid of appellant, and feared his behavior would continue and even escalate. Appellee's friend, who was present during several of the encounters between the parties, testified that appellee was afraid to leave her home and feared that appellant would follow her when she did go out. There was at least one instance when appellee drove past appellant on the road, turned around, and then followed her in his police cruiser.
 {¶ 9} Appellee also offered evidence that appellant knew his advances were improper and would cause distress. First, appellee testified that she told appellant his conduct made her uncomfortable. She also resisted his attempt to kiss her, sustaining physical injury to her arms. Finally, appellant had received both a verbal and a written *Page 4 
warning for similar conduct involving an ex-girlfriend while employed with the Clay Township Police Department in 2004. Appellant's former employer ordered him into counseling as a condition of continued employment, in order to correct his inappropriate behavior.
 {¶ 10} Based on this evidence, the court found appellee met her burden of proving, by a preponderance of the evidence, that appellant knowingly caused her to believe she would be physically harmed or would suffer mental distress because of appellant's pattern of conduct. The court granted the SCPO on October 3, 2005. Appellant filed objections to the magistrate's decision on October 20, 2005. After review, the trial court adopted the magistrate's decision in its entirety on January 11, 2006. Appellant now challenges that decision through the following assignments of error:
 {¶ 11} "I. The trial court erred in issuing the civil protection order as appellee failed to prove the acts of the appellant were knowingly committed.
 {¶ 12} "II. The trial court erred in issuing the civil protection order as appellee failed to prove the acts committed by the appellant caused her mental distress."
 {¶ 13} R.C. 2903.211 proscribes menacing by stalking and reads in paragraph (A)(1): "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." A SCPO is preventative in nature, allowing a court to act before a stalker can harm his or her victim. Short v. Walker (Jan. 16, 2001), 12th *Page 5 
Dist. No. CA2000-08-009, citing Lindsay v. Jackson (Sept. 8, 2000), 1st Dist. Nos. C-990786, A-9905306.
 {¶ 14} R.C. 2903.214(C) provides that an individual may seek a SCPO by filing a petition which sets forth: "(1) An allegation that the respondent engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order, including a description of the nature and extent of the violation; [and] (2) A request for relief under this section."
 {¶ 15} In appellant's first assignment of error, he disputes that appellee met her burden in proving his acts were committed knowingly. In appellant's second assignment of error, he claims appellee failed to prove his conduct caused any mental distress. Both assignments of error challenge the manifest weight of the evidence.
 {¶ 16} For the trial court to grant a SCPO, the petitioner must show, by a preponderance of the evidence, that the complained of conduct violates the menacing by stalking statute, R.C. 2903.211. See,Lindsay, supra, citing Felton v. Felton (1997), 79 Ohio St.3d 34, 42; see, also, Striff v. Striff, 6th Dist. No. WD-02-031, 2003-Ohio-794, ¶ 10. There is, however, a lack of uniformity among the appellate districts with regard to the proper standard of review in appeals from SCPOs. See Abuhamda-Sliman v. Sliman, 161 Ohio App. 3d 541,2005-Ohio-2836, ¶ 8. This court has applied an abuse of discretion standard. See Irwin v. Murray, 6th Dist. No. L-05-1113, 2006-Ohio-1633, ¶ 16. This court has also considered the manifest weight of the evidence. See Kiedrowicz v. Kiedrowicz (Apr. 9, 1999), 6th Dist. No. H-98-049. *Page 6 
 {¶ 17} The Eighth District Court of Appeals applies a standard based on the type of challenge presented on appeal. Where the challenge is to the terms of the order, that court applies an abuse of discretion standard. Where the challenge is to the issuance of the order, the Eighth District applies a manifest weight of the evidence standard. SeeAbuhamda-Sliman, supra, ¶ 9-10. The Second, Fourth, and Tenth District Courts of Appeal have also used this approach. See Young v. Young, 2d Dist. No. 2005-CA-19, 2006-Ohio-978, ¶ 22, citing Walters v.Walters, 150 Ohio App. 3d 287, 2002-Ohio-6455, ¶ 9, and Downs v.Strouse, 10th Dist. No. 05AP-312, 2006-Ohio-505, ¶ 10-11. We agree with the approach used by the Second, Fourth, Eighth and Tenth District Courts of Appeal. Appellant, here, does not challenge the scope of the SCPO, but instead challenges the decision to issue the order. Therefore, we will apply a manifest weight of the evidence standard on review.
 {¶ 18} It is well established that "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Const.Co. (1978), 54 Ohio St.2d 279, syllabus. Deference is given to the trial court's findings, since the trial court "is best able to view the witnesses and observe their demeanor[.]" Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 19} Evidence was presented by both parties to the trial court. While the appellant's testimony either refuted or explained each incident alleged by appellee, the trial court determines "what weight and credibility to afford the appellant's version of the *Page 7 
events and the appellee's version of the events." Smith v. Wunsch,162 Ohio App.3d 21, 2005-Ohio-3498, ¶ 22 [citations omitted].
 {¶ 20} In this case, the court found the testimony of appellee to be more credible. The trial court found as fact that appellant came to appellee's home or sought her out in public at least five times while in uniform, the contacts were unwanted, at least one contact resulted in physical injury to appellee, and appellee was and remains in fear of appellant. Furthermore, appellant's claim that appellee must show actual mental distress in order to meet her burden of proof is contrary to the law. There is no requirement that a petitioner show actual mental distress to meet the elements of stalking. Irwin, supra, ¶ 18, citingStriff, supra, citing Dayton v. Davis (1999), 136 Ohio App.3d 26, 32. Appellee only needs to show that appellant knowingly caused her to believe she would suffer mental distress or physical harm. Id
 {¶ 21} Upon review of the record, we find sufficient evidence to establish, by a preponderance of the evidence, that appellant acted knowingly in causing physical injury to appellee, and in causing appellee to believe he would cause mental distress or physical harm. Appellant's two assignments of error are not well-taken.
 {¶ 22} On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
 JUDGMENT AFFIRMED. *Page 8 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., George M. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio. *Page 1