OPINION
{¶ 1} The respondent-appellant, Monique Underwood, appeals the judgment of the Marion County Common Pleas Court, Family Division, granting a civil stalking protection order in favor of the petitioner-appellee, Brenda Nwosu.
 {¶ 2} On June 21, 2006, Brenda filed a petition for a CSPO against Monique pursuant to R.C. 2903.214. Brenda lives in Marion, Ohio and is married to Maxwell Nwosu. Monique lives in Dublin, Ohio and is the mother of Maxwell's six year old son, though they were never married. Custody and visitation concerning the minor child are governed by orders established in the Franklin County Common Pleas Court. Monique is the child's legal custodian and residential parent, and Maxwell has scheduled visitation time, including Wednesday evenings. Maxwell is also entitled to summer visitation with the minor child for six weeks, during which time, Monique is entitled to visitation on Wednesday evenings. Due to some problems between Maxwell and Monique concerning the exchange of the child, visitation was modified to provide for a central exchange location at the state patrol post in Delaware, Ohio.
 {¶ 3} In 2006, Maxwell began working on second shift, which made him unavailable for visitation with his son on Wednesday nights. Maxwell decided to *Page 3 
make up his lost visitation time by keeping the minor child during Monique's Wednesday night summer visitation.
 {¶ 4} On June 14, 2006, a local police officer arrived at Brenda's home and stated she was responding to a domestic dispute. Brenda had recently returned home from school, and Maxwell was at work. Monique then arrived at Brenda's home and asked for the minor child. Brenda told Monique she did not know the child's whereabouts as she had just gotten home herself. Brenda stated, "[m]e and her talked, smiled, laugh [sic] and she went." During that evening, Brenda noticed Monique's car near her house several times, and Monique later stopped at Brenda's home a second time, but Brenda was not home. Just two days later, Monique, escorted by a local police officer, attempted to pick up the child from Brenda's home. Monique did not obtain custody of the child on either date.
 {¶ 5} On June 21, 2006, Brenda filed a petition for an ex parte CSPO. At the ex parte hearing, Brenda testified that Monique had been to her house with the police on two occasions and that as she prepared to testify, her daughter called and told her that Monique was at the house again. The court granted the ex parte CSPO and scheduled the matter for a full hearing on June 26, 2006.
 {¶ 6} After several continuances, requested by the parties, this matter came on for full hearing on August 31, 2006. Brenda, pro se, presented her testimony and Maxwell's testimony, and Monique testified on her own behalf. At *Page 4 
the conclusion of the hearing, the trial court found "sufficient evidence * * * for a civil stalking protection order to issue in this matter." The court ordered Monique not to "abuse, threaten, harass, bother, or follow" Brenda, that she not enter Brenda's "residence, school, business, or place of employment," and that she remain at least 500 feet away from Brenda. The court ordered the CSPO into effect for two years. Monique appeals the trial court's judgment, setting forth three assignments of error for our review.
 First Assignment of Error The record contains insufficient evidence to support the stalking protection order.
 Second Assignment of Error The stalking protection order is contrary to the manifest weight of the evidence.
 Third Assignment of Error The court erred to the prejudice of Respondent-Appellant by ordering Respondent to stay at least 500 feet away from the petitioner wherever she may be found, in any public or private place, including encounters on public and private roads, highways, and thoroughfares.
 {¶ 7} We note that Brenda has not filed an appellee's brief. App.R. 18(C) provides that the appellee's failure to file a brief will generally bar the appellee from oral argument and will allow the court to "accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief *Page 5 
reasonably appears to sustain such action." As such, we accept as true Monique's statement of fact and hold that her brief reasonably supports reversal of the trial court's judgment.
 {¶ 8} In her first assignment of error, Monique contends that the petitioner for a CSPO must prove that the respondent knowingly caused physical harm or mental distress. Monique contends there is insufficient evidence to prove that she knowingly caused mental distress.
 {¶ 9} "Sufficiency of the evidence is the legal standard applied to determine whether the case may go to a jury, or whether the evidence is legally sufficient to support the verdict as a matter of law."Kramer v. Kramer, 3rd Dist. No. 13-02-03, 2002-Ohio-4383, at ¶ 10, citing State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541. In contrast, "weight of the evidence concerns the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." Id., citingThompkins, at 387. If an appellate court determines "that the evidence was insufficient to support a trier of fact's judgment as a matter of law, it is then unnecessary to thereafter review the manifest weight of the evidence." Id.
 {¶ 10} A trial court's decision to grant a CSPO is reviewed for an abuse of discretion. Id., at ¶ 11, citing Mottice v. Kirkpatrick, 5th Dist. No. 2001CA00103, 2001-Ohio-7042, citing Woolum v. Woolum (1999),131 Ohio App.3d 818, *Page 6 723 N.E.2d 1135. An "`abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144, internal citations omitted. "If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion." Id., citing Ross v. Ross (1980),64 Ohio St.2d 203, 414 N.E.2d 426.
 {¶ 11} In seeking a CSPO, the petitioner must file a petition alleging that the respondent violated R.C. 2903.211, and the petitioner must include "a description of the nature and extent of the violation." R.C.2903.214(C). After an ex parte or full hearing, the court may issue a CSPO if the petitioner has proved his or her case by a preponderance of the evidence. Kramer, at ¶ 14, citing Lindsay v. Jackson (Sept. 8, 2000), 1st Dist. Nos. C-990786, A-9905306, unreported, citing Felton v.Felton, 79 Ohio St.3d 34, 1997-Ohio-302, 679 N.E.2d 672. R.C.2903.211(A) provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." "A pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C.2903.211(A)(1). "One incident is insufficient to *Page 7 
establish a `pattern of conduct.'" Kramer, at ¶ 15, citing State v.Scruggs (2000), 136 Ohio App.3d 631, 737 N.E.2d 574; Dayton v.Davis (1999), 136 Ohio App.3d 26, 735 N.E.2d 939; Baddour v. Fox (Nov. 15, 2000), 5th Dist. No. 00 CA 0035, unreported.
 R.C. 2903.211(C)(2) defines mental distress as "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." Furthermore, explicit or direct threats of physical harm are not necessary to establish a violation of R.C. 2903.211(A). Rather, the test is whether the offender, by engaging in a pattern of conduct, knowingly caused another to believe the offender would cause physical harm to him or her. State v. Jones (Oct. 21, 1996), Warren App. No. CA95-12-122. See also State v. Smith (1998), 126 Ohio App.3d 193, 202, 709 N.E.2d 1245; State v. Kent (Apr. 21, 2000), Hamilton App. Nos. C-990267 and C-990268.
Kramer, at ¶ 15.
 {¶ 12} On this record, we cannot find credible and competent evidence to support the trial court's grant of the CSPO. While we believe Brenda had some mental distress, there is insufficient evidence on the record to prove that Monique "knowingly" caused it. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). *Page 8 
 {¶ 13} Brenda testified that she had no problem with Monique "coming and talking to her son," but she stated, "she is not to come to my home and disrespect me in my home." On June 14, 2006, Brenda testified that she and Monique talked, smiled, and laughed at her home. On June 16, 2006, Brenda was in New York when Monique came to her house. She only knew about Monique's visit because her son called to tell her about the situation. When Monique went to Brenda's home on June 21, 2006, Brenda was in court obtaining an ex parte CSPO against her. On each of these visits, Monique brought a local police officer to prevent any disturbances and to document the visitation situation due to Maxwell's apparent unilateral modification of the visitation order. Such a task is not uncommon for police officers, and Brenda admitted that Monique was wise to bring an officer so as to avoid a problem. See generallyIssa v. Blair, 5th Dist. No. 2006AP050026, 2007-Ohio-930; Williamson v.Cooke, 10th Dist. No. 05AP-936, 2007-Ohio-493; Walton v. Walton, 6th Dist. No. WD-05-002, 2005-Ohio-5734.
 {¶ 14} Brenda also testified about Monique frequently calling her home; however, most of the phone calls were Monique's attempts to speak with Maxwell. Brenda also testified that Monique "told me one time on the phone I'm lucky she is not like she used to be. If I was, I would be in trouble." Brenda did not state when this comment was made. Furthermore, on cross-examination, Brenda admitted that Monique's comment meant she was not in trouble because *Page 9 
Monique had made some changes in her life, but she still interpreted the statement as a threat.
 {¶ 15} Monique testified that she took the police to Brenda's home so they could document Maxwell's breach of the visitation order and to prevent "false allegations." She stated that she never threatened Brenda, that she did not intend to harass Brenda, that she never intended to harm Brenda, and that she has been to Brenda's home on other occasions without the police and without incident.
 {¶ 16} The testimony clearly shows that the crux of this issue centers around Maxwell and Monique's visitation schedule, to which Brenda is not a party, and to which she acknowledges no involvement. We do not doubt that Brenda has been placed in an uncomfortable situation due to the circumstances between Monique and Maxwell and that she is troubled by the police coming to her home three times within seven days; however, we have previously noted that "R.C. 2903.211 and R.C. 2903.214 were not enacted for the purpose of alleviating uncomfortable situations, but to prevent the type of persistent and threatening harassment that leaves victims in constant fear of physical danger." Kramer, at ¶ 17. Monique's request for a police officer's presence is both legitimate and lawful, and Brenda acknowledged that such a plan is a good idea. Brenda's claimed reaction to the visits with the police is neither reasonable nor foreseeable. Moreover, requesting the presence of police to keep the peace should never form *Page 10 
the basis for a CSPO. On this record, there is insufficient evidence to support the issuance of a CSPO. As such, the trial court's judgment was contrary to law and an abuse of discretion. The first assignment of error is sustained.
 {¶ 17} Having sustained the first assignment of error, the second and third assignments of error are rendered moot. The judgment of the Marion County Common Pleas Court, Family Division, is reversed.
Judgment Reversed and Cause Remanded. SHAW and PRESTON, J.J., concur.
 /jlr *Page 1