OPINION
{¶ 1} Respondent-Appellant, Carl Van Vorce ("Appellant"), appeals a judgment of the Auglaize County Court of Common Pleas, granting Petitioner-Appellee's, Dinah Van Vorce ("Appellee"), petition for a Civil Stalking Protection Order ("CSPO"). On appeal, Appellant contends that the trial court erred in granting Appellee's petition, because the record contains insufficient evidence to support the CSPO. Additionally, Appellant contends that the trial court's decision is contrary to the manifest weight of the evidence presented. Upon review of the entire record, we find that the evidence is sufficient to support the trial court's decision and that the trial court's decision is not against the manifest weight of that evidence. Accordingly, the trial court's judgment is affirmed.
 {¶ 2} On March 19, 2004, Appellee filed a petition for a CSPO against Appellant, pursuant to R.C. 2903.214(C)(1). At the time that Appellee filed her petition, she and Appellant were married. However, the parties had separated in November of 2003 and dissolution papers had been drawn up between the parties, which included a separation agreement. The parties had been married for three years and had been involved in a relationship for six years. Additionally, Appellant was a sheriff's deputy at the time the petition was filed, as well as during Appellee and Appellant's marriage and separation.
 {¶ 3} Following an ex parte hearing, the trial court granted Appellee's order and scheduled a full hearing on the matter for March 25, 2004.
 {¶ 4} On March 25, 2004, a full hearing on Appellee's petition was held. At that hearing, neither Appellant nor Appellee were represented by counsel. The trial court took testimony from both Appellant and Appellee; however, no other witnesses were called to testify.
 {¶ 5} During Appellee's testimony, she stated that Appellant had obsessively called her at her places of employment, at her home and on her cell phone; had obsessively followed, watched and waited for her at her home and her places of employment; and, had obsessively visited her home and her places of employment uninvited. Appellee, specifically, testified that between December 5, 2003, and January 4, 2004, she had received fifty-three calls from Appellant on her cell phone; that there were times that Appellant would come to her house, and, when she would not answer the door, he would return within thirty minutes; that she had several messages saved on her cell phone from Appellant; that she had to have her sister come to her house one night, because Appellant would not stop following Appellee; that Appellant followed her sister and ran a registration check on her sister's vehicle's license plate number to identify her car; that her local mail carrier had logged a complaint on her behalf, because Appellant had parked a sheriff's van, while in uniform, outside of Appellee's house; that there were episodes where her mail had been tampered with; and, that there were several times when she would look outside her house and Appellant would be parked in her driveway with his lights on.
 {¶ 6} In addition to Appellee's specific testimony, the trial court also admitted into evidence a fourteen page journal kept by Appellee from November of 2003 to March of 2004. Appellee's journal specifically documented not only the incidents that Appellee testified to at the hearing, but also numerous other incidents that took place between she and Appellant. Appellee's journal documented Appellant's incessant calling, following, watching and harassing.
 {¶ 7} Specifically, Appellee's journal detailed the numerous times Appellant had repeatedly called Appellee's home, places of employment and cell phone. Often, he would call her two to six times in a row. In her journal, Appellee stated that she would usually end up answering the phone, in order to stop Appellant's calls. When Appellee would talk to Appellant on the phone, he would harass her about what she had been doing or who she had been with. Finally, Appellee's journal noted that Appellant's phone calls progressed to the point where Appellee knew that Appellant had been following her, because he would be able to tell her where she had been and who she had been with on days when she had not been in contact with him. In addition to Appellant's calling, he would also leave repeated messages, which were often demeaning and harassing.
 {¶ 8} Appellee also documented Appellant's obsessive following and watching. Appellee's journal includes numerous accounts of Appellant sitting outside of her home in his car, Appellant showing up at Appellee's places of employment while she was working and Appellant following her home from her places of employment or social functions.
 {¶ 9} Appellee's journal also included several incidents where Appellant would stop at her house late at night unannounced. When Appellee would not answer the door, Appellant would often leave for a short period of time, but would later return. Additionally, Appellant would show up unannounced at Appellee's places of employment and bother her while she was working.
 {¶ 10} Finally, in her journal, Appellee also discussed other encounters she had with Appellant. Specifically, she discussed the incident where Appellant obtained her sister's license plate number while following Appellee's sister from Appellee's house. She discussed the steps she had taken to make Appellant stop calling and following her. Appellee had contacted Appellant's boss, the Allen County Sheriff, and spoke with him about Appellant using his position as a deputy sheriff to keep tabs on her. Appellee changed her home phone number and had to seek assistance from the hospital security staff to keep Appellant from harassing her while she worked at the hospital. Finally, Appellee documented specific instances where she had personal interactions with Appellant. While these encounters were generally non-threatening, physically, Appellee made notes on the demeaning and harassing manner in which Appellant behaved.
 {¶ 11} Finally, at the hearing, Appellee stated the following about her journal:
And those are just occasions that I have witnessed and I havedocumented from the time I have moved and I have certainly plentyof people that can witness the same behaviors and cell phonerecords, work records, people at work. I have no problem insubpoenaing people to testify that they've witnessed the samebehaviors. And, in fact, through my psychological counseling I amone of the few people who has all along refused to state that heis stalking me because I have always given the benefit of thedoubt, answering the door, answering the calls, let the calls go,let them to voice mail, and finally after the episodes last weekwhen he called me in ER at work and then the next morning when Iwas going to work saying he was going to come up to work and talkto me, that's when I finally decided I needed to do something.
 I don't have any freedom, and its not only impinging on myfreedom, it is impinging on two jobs that I work at. It isimpinging on me to be able to move anywhere I go, me having toalert security, people that I work with, where I walk, and I feellike that's a violation. I can't walk out of my home, out of mydoor without wondering who is out there * * *.
 {¶ 12} During Appellant's testimony, he stated that Appellee often initiated the contact. He went on to deny specific allegations, but stated that there were many things he could not defend against because he did not have any witnesses. He stated that he had called her frequently, but stated that it was usually to return her phone calls. He testified that he had not run a registration check on Appellee's sister's license plate number, but that he had run a registration check on Appellee's boyfriend's vehicle while it was parked at Appellee's house. He also testified that he had a fellow sheriff's deputy following Appellee, in order to "keep tabs" on her.
 {¶ 13} Following the hearing, the trial court found that while Appellant had not threatened Appellee with physical harm, he had caused her mental distress. Accordingly, the trial court continued Appellee's petition. It is from this judgment that Appellant appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT ERRED AS A MATTER OF LAW IN THAT THE RECORDCONTAINS INSUFFICIENT EVIDENCE TO SUPPORT THE STALKING PROTECTIONORDER.
 Assignment of Error No. II THE TRIAL COURT'S CONCLUSION THAT A CIVIL STALKING PROTECTIONORDER SHOULD ISSUE WAS CONTRARY TO THE MANIFEST WEIGHT OF THEEVIDENCE PRESENTED.
 {¶ 14} In the first and second assignments of error, Appellant attacks the adequacy of the evidence presented and entered into evidence at the hearing before the trial court. Because these issues are interrelated, we will address them together.
 {¶ 15} While Appellant attacks the adequacy of the evidence the trial court based its decision on through the sufficiency of the evidence presented and the manifest weight of that evidence, we must initially note that the standard of review an appellate court applies to a CSPO is an abuse of discretion standard.Kramer v. Kramer, 3d Dist. No. 13-02-03, 2002-Ohio-4383 at ¶ 11, citing Mottice v. Kirkpatrick (Dec. 27, 2001), 5th Dist. No. 2001CA00103. An abuse of discretion implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable.Blackmore v. Blakemore (1983), 5 Ohio St.3d 217, 219. If there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion. Kramer, supra, at ¶ 11, citing Ross v. Ross (1980), 64 Ohio St.2d 203.
 {¶ 16} R.C. 2903.214 governs the issuance of a CSPO. R.C.2903.21(C)(1) provides that a person may seek civil relief against an alleged stalker by filing a petition containing "[a]n allegation that the respondent engaged in a violation of section2903.211 of the Revised Code against the person to be protected by the protection order, including a description of the nature and extent of the violation." Thus, in order to obtain a CSPO, Appellee must establish, by a preponderance of the evidence, that Appellant engaged in a violation of R.C. 2903.211, the menacing by stalking statute, against her. Kramer, supra, at ¶ 14. See, also, Tuuri v. Snyder (Apr. 30, 2002), 11th Dist. No. 2000-G-2325; Huffer v. Chafin (Jan. 28, 2002), 5th Dist. No. 01 CA 74; Lindsay v. Jackson (Sept. 8, 2000), 1st Dist. Nos. C-990786, A-9905306.
 {¶ 17} R.C. 2903.211(A)(1), Ohio's menacing by stalking statute, provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." A pattern of conduct is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(A)(1). Additionally, one incident is not sufficient to establish a "pattern of conduct." Kramer, supra, at ¶ 15, citing State v.Scruggs (2000), 136 Ohio App.3d 631. R.C. 2903.211(C)(2) defines mental distress as "any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." "However, a showing of actual mental distress is not a required element of menacing by stalking; a petitioner only needs to establish that the respondent knowingly caused him to believe that mental distress or physical harm would result." Luikart v.Shumate, 3d Dist. No. 9-02-69, 2003-Ohio-2130, at ¶ 8, citingStriff v. Striff, 6th Dist. No. WD-02-031, 2003-Ohio-794, at ¶ 11; See, also, Dayton v. Davis (1999), 136 Ohio App.3d 26, 32.
 {¶ 18} While the trial court did not find that Appellant had threatened Appellee with bodily harm, it did find that Appellant "has caused mental distress against the Petitioner." Upon review of the record, we find that there is sufficient evidence to establish by a preponderance that Appellant knowingly caused Appellee to believe he would cause her mental distress. Based upon the testimony presented by both Appellant and Appellee, as well as Appellee's journal, which was admitted into evidence, we cannot say that the Appellant's behavior did not rise to the level that would cause Appellee a "mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment." R.C. 2903.211(C)(2).
 {¶ 19} As noted above, for a period of six months, Appellant obsessively phoned, followed and watched Appellee. Additionally, as a deputy sheriff, he used his position, as well as department resources to further his pursuit of Appellee. Finding the Appellant's extreme and obsessive conduct to be competent, credible evidence supporting the trial court's decision, we are unable to find that the issuing of the CSPO was unreasonable pursuant to R.C. 2903.211 and R.C. 2903.214.
 {¶ 20} Thus, having found that the trial court did not err in continuing the terms of the CSPO against Appellant, the first and second assignments of error are overruled.
 {¶ 21} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 Cupp and Bryant, J.J., concur.