[Cite as *Retterer v. Little*, 2012-Ohio-131.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

RORY S. RETTERER,

    PETITIONER-APPELLEE,         CASE NO. 9-11-23

    v.

MICHAEL J. LITTLE,              O P I N I O N

    RESPONDENT-APPELLANT.

---

Appeal from Marion County Common Pleas Court
Trial Court No. 2011 CV 0283

Judgment Affirmed and Cause Remanded

Date of Decision: January 17, 2012

---

APPEARANCES:

    *J. C. Ratliff and Jeff Ratliff* for Appellant

    *Michael N. Schaeffer and Scott N. Schaeffer* for Appellee

**ROGERS, P.J.**

{¶1} Respondent-Appellant, Michael Little ("Michael"), appeals the judgment of the Court of Common Pleas of Marion County granting Petitioner-Appellee, Rory Retterer ("Rory"), and his wife, Lorinda Retterer ("Lorinda"), a civil stalking protection order ("CSPO") against Michael. On appeal, Michael contends that the record contains insufficient evidence to support the issuance of the CSPO for Rory; that the record contains insufficient evidence to support the issuance of the CSPO for Lorinda; that granting Rory the CSPO was against the manifest weight of the evidence; and, that including Lorinda as a protected person under the CSPO was against the manifest weight of the evidence. Based on the following, we affirm the judgment of the trial court.

{¶2} On April 27, 2011, Rory filed a petition seeking a CSPO against Michael, on behalf of himself and Lorinda. That same day, the trial court issued an ex parte protection order and scheduled the matter for a full hearing.

{¶3} On May 10, 2011, the matter proceeded to a full hearing during which the following evidence and testimony was adduced.

{¶4} Rory and Lorinda (collectively "the Retterers") testified that they have resided at 3854 Maple Grove Road for eight years. Michael and Melody Little ("Melody"), Michael's wife, (collectively "the Littles") testified that they have resided at 3878 Maple Grove Road for ten years. Both properties are located on

the east side of Maple Grove Road, which runs north and south in Marion County. The Retterers' property is located immediately north of the Littles' property.

{¶5} Rory and Lorinda testified that since 2006 they have been the victims of routine verbal abuse from Michael. Rory and Lorinda described Michael's verbal abuse as being threatening, aggressive, profanity infused speech which is triggered whenever Michael hears or sees them on their property outside their residence. Lorinda testified that Michael's verbal abuse "is not just a minute or two * * * he stands out there for an extended length of [time] screaming at the top of his voice." Hearing Tr., p. 6. Lorinda further explained that during episodes of Michael's verbal abuse his entire body shakes as though he is consumed with rage. Rory and Lorinda testified that they believe Michael's routine verbal abuse towards them is meant to provoke an altercation, intimidate, and instill fear.

{¶6} Rory testified that the first incident with Michael occurred in 2006 (hereinafter "the tree-trimming incident"). A dispute arose regarding trees that were planted on the Retterers' property along the Littles' northern property line. Michael complained that the tree branches were hanging over his property. Rory testified that Michael trimmed the branches which hung over his property and threw the branches into his (Rory's) yard. Rory testified that he attempted to discuss the matter with Michael in a "civil manner", but Michael crossed onto his property and "got into [his] face" telling him to cut the trees down. Hearing Tr., p.

Rory explained that Michael was trembling with rage, clinching his fists, and made quick movements with his hands while he was yelling at him about the trees. Rory testified that he was certain Michael was going to cause him physical harm. Lorinda testified that she witnessed the incident. Lorinda confirmed that Michael came onto her property and "[got] into [Rory's] face" and yelled at him about the trees. Hearing Tr., p. 8. Lorinda testified that Michael's actions and demeanor caused her to fear for Rory's safety so much so that she ran to a neighbor's residence and asked that they contact law enforcement if the situation escalated. Several days after the incident the Retterers reported the incident to the Marion County Sheriff, but no charges were filed. Joint Exhibit 1, p. 10.

{¶7} Michael and Melody testified that in 2006 they trimmed portions of the Retterers' trees which hung over their property. In order to determine which branches hung over their property, Michael laid PVC piping along his property line. Michael testified that he did not cross onto the Retterers' property when he trimmed the trees, nor did he have a face-to-face confrontation with Rory. Melody acknowledged that the Retterers' contacted the Marion County Sheriff about the incident, but no charges were filed.

{¶8} Lorinda testified that an incident occurred in the fall of 2007 (hereinafter "the truck incident"). Lorinda was returning home from a church function at night. As she approached her residence, Lorinda noticed an individual

run to a truck parked in the Littles' driveway, which is located on the south side of the Littles' property. As Lorinda drove up her driveway towards her garage she noticed the same truck driving across the Littles' backyard towards her vehicle with its headlights on and the horn blaring. Fearing that the truck was going to hit her vehicle, Lorinda quickly parked her vehicle in the garage and ran into her residence. Upon entering her residence, Lorinda testified that she was shaking in fear and informed Rory of the incident and her belief that "[Michael is] trying to kill me." Hearing Tr., p. 10. Rory testified that Lorinda was scared and trembling when she came into the residence after the incident.

{¶9} Lorinda testified that she and Rory had a surveillance system equipped with cameras installed on the exterior of their residence. One of the surveillance cameras was positioned over the garage pointing south towards the Littles' property. Lorinda testified that immediately after the incident she and Rory reviewed the surveillance video. Petitioner's Exhibit B. The surveillance video shows a vehicle driving across the Littles' property towards the Retterers' garage with its headlights on as another vehicle, presumably Lorinda's vehicle, drives into the garage.[1]

{¶10} The following day, the Retterers reported the incident to the Marion County Sheriff. Joint Exhibit 1, pp. 1-6. Rory and Lorinda testified that they,

---

[1] The surveillance video did not record any sound, thus Lorinda's testimony provides the only evidence that the truck's horn was blaring as it drove towards Lorinda's vehicle.

along with a sheriff's deputy, surveyed the location where Michael's truck would have been positioned the previous night and discovered skid marks leading up to and through the PVC piping Michael had laid to define his property line. Rory and Lorinda each testified that the skid marks crossed onto their property. Rory and Lorinda testified that they decided not to press charges.

{¶11} Michael and Melody testified that they have continued problems with loud music emanating from the Retterers' residence, as well as barking dogs and beeping car alarms. On the night of the truck incident, Melody recalled loud music emanating from the Retterers' residence causing the walls of her residence to vibrate. In an effort to quell the music emanating from the Retterers' residence, Michael testified that he drove his truck up to, but not over, the Retterers' property line, parked it, and honked his horn. Michael testified that a sheriff's deputy visited him at work the following day to discuss the incident. Michael testified that the sheriff's deputy informed him that Lorinda thought he was going to hit her vehicle and that she was frightened by his actions. Michael testified that he had no intention of frightening Lorinda.

{¶12} Shortly after the incident involving the truck, Lorinda became severely ill and spent much of the following three years in the hospital. Rory testified that he spent much of that time with Lorinda. Consequently, neither Rory nor Lorinda spent much time at their residence. However, Rory and Lorinda

testified that on occasions when they returned to their residence, Michael continued to verbally abuse them. Rory testified that in 2009, as a result of his wife's illness, his father's recent death, and Michael's verbal abuse, he took two months off of work and sought counseling. During this time, Rory testified that he suffered from stress, migraines, and symptoms of irritable bowel syndrome ("IBS"). Rory attributed much of his maladies to Michael's verbal abuse, testifying that "when [Michael] does the badgering it stresses me out, it causes me migraines, I've come down with symptoms of IBS." Hearing Tr., p. 69.

{¶13} On April 16, 2011, the Retterers' hosted a wedding reception for Lorinda's brother, Jeremy Pelphrey (hereinafter "the wedding reception incident"). Pelphrey testified that he and another guest were standing outside the Retterers' residence while guests were arriving for the reception. During this time, Pelphrey witnessed Michael yelling profanities and gesturing with clenched fists at guests who parked their vehicle along the road in front of his property. Pelphrey testified that the incident made him very uneasy. Though Rory and Lorinda testified that they did not witness Michael's behavior towards their guests, Lorinda testified that Michael's behavior created an air of concern among the guests.

{¶14} Michael and Melody testified that the Retterers' did not ask them whether their guests could park their vehicles along the road in front of their property. Michael and Melody explained that several of the Retterers' guests

parked on their grass along the road.[2]   Michael and Melody testified that they asked those guests to park elsewhere.  Michael and Melody testified that Michael did not threaten any of the Retterers' guests, but Michael testified that he did yell at guests who parked on their grass along the road.

{¶15} The last incident occurred on April 23, 2011 (hereinafter "the dog barking incident").  Rory testified that he was working in his garage, when his dogs started barking towards the trees abutting the Littles' property.  Rory walked out of his garage to determine why the dogs were barking and saw Michael standing in the tree line.  Rory, without objection, testified that Michael looked at him and said, "You afraid?  Are you - - you think that I'm gonna come over and kill your puppies?"  Hearing Tr., pp. 70-71.  Rory continued that Michael followed this remark stating, "You would be next asshole."  *Id*. at 71.  Rory testified that he interpreted Michael's remarks as a threat of physical harm.  Three days after the incident, Rory filed a report with the Marion County Sheriff.  Joint Exhibit 1, pp. 7-9.  The report contained an allegation that Michael threatened to harm the Retterers' dogs, but did not contain an allegation that Michael threatened Rory. *Id.*

{¶16} Michael testified that the incident involving the dogs occurred while he was mowing his lawn.  Michael explained that each time he mowed near the

---

[2] At the conclusion of the hearing, the trial court noted that the Retterers' guests lawfully parked their vehicles along the road in front of the Littles' residence.

Retterers' property the dogs would start barking. Michael testified that Rory took no action to quiet his dogs. As a result, Michael testified that he yelled at Rory to quiet his dogs. Michael testified that he never threatened Rory or his dogs.

{¶17} As a result of the foregoing incidents and Michael's alleged verbal abuse, Rory and Lorinda testified that they have significantly altered how they enjoy their property. Rory testified that he planted trees along his property line abutting the Littles' property in an effort to minimize contact with Michael. Rory and Lorinda testified that they moved all of their outdoor possessions located nearest to the Littles' property to the opposite side of their yard. Similarly, Rory, Lorinda, and Pelphrey testified that family and friends are encouraged to avoid that portion of their yard nearest to the Littles' property. Lorinda testified that in 2009 she and Rory attempted to sell their residence because of Michael's actions, but abandoned the endeavor due to the market value of their residence.

{¶18} Rory and Lorinda each testified that they fear Michael will cause them physical harm. Michael, however, testified that he has never intended to cause the Retterers to be in fear of physical harm or cause them mental distress. Rory and Lorinda explained that they have delayed seeking a protection order in the hopes that Michael's actions towards them would subside. As a result of the incidents that occurred in April 2011, Rory and Lorinda testified that they sought the protection order because they could no longer ignore Michael's actions.

{¶19} After both parties rested, the trial court found that there was sufficient evidence to issue the protection order. Specifically, the trial court stated that the protection order would be issued for a period of four years and that "[Michael] is * * * to stay at least 60 feet away from Rory Retterer and Lorinda Retterer." Hearing Tr., p. 166.[3] Despite the trial court's foregoing statement, we note that the protection order states that "[r]espondent shall stay away from protected persons named in this Order, and shall not be present within 500 feet or 60 feet (distance) of any protected persons * * *." Protection Order, p. 2. Since this language clearly contravenes the parameters set forth by the trial court during the hearing, and would otherwise be impossible to obey due to the proximity of Michael's residence to the Retterers' residence, it is clear that the trial court did not intend the order to prohibit Michael from being present within 500 feet of Rory or Lorinda.

{¶20} It is from this judgment Michael appeals, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT THE STALKING PROTECTION ORDER FOR RORY RETTERER.**

### Assignment of Error No. II

---

[3] We also note that the temporary protection order only required Michael to remain at least 60 feet away from Rory and Lorinda. *See* Docket Entry No. 2.

**THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT THE STALKING PROTECTION ORDER FOR LORINDA RETTERER.**

*Assignment of Error No. III*

**THE STALKING PROTECTION ORDER GRANTED FOR RORY RETTERER IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. IV*

**THE STALKING PROTECTION ORDER GRANTED FOR LORINDA RETTERER IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.**

**{¶21}** Due to the nature of Michael's assignments of error, we elect to address all four assignments of error together.

*Assignments of Error Nos. I, II, III & IV*

**{¶22}** In his first, second, third, and fourth assignments of error, Michael contends that the record contains insufficient evidence to support the issuance of the CSPO for Rory and Lorinda, and that the issuance of the CSPO for Rory and Lorinda was against the manifest weight of the evidence. We disagree.

**{¶23}** When reviewing a trial court's decision to grant a civil protection order, we will not reverse the decision absent an abuse of discretion. *Van Vorce v. Van Vorce*, 3d Dist. No. 2-04-11, 2004-Ohio-5646, ¶ 15, citing *Kramer v. Kramer,* 3d Dist. No. 13-02-03, 2002-Ohio-4383, ¶ 11. An abuse of discretion requires

more than a mere error of law or judgment. An abuse of discretion implies that the decision of a court was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Id.* Further, if there is some competent, credible evidence to support the trial court's decision regarding a CSPO petition, there is no abuse of discretion. *Warnecke v. Whitaker*, 3d Dist. No. 12-11-03, 2011-Ohio-5442, ¶ 12, citing *Ross v. Ross*, 64 Ohio St.2d 203, 414 N.E.2d 426 (1980).

{¶24} Revised Code section 2903.214 governs the issuance of a CSPO. This section provides, in relevant part:

> **(C)  A person may seek relief under this section for the person, or any parent or adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court. The petition shall contain or state all of the following:**
>
> **(1)  An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order * * *;**

{¶25} To be entitled to a CSPO, the petitioner must show by a preponderance of the evidence that the respondent engaged in a violation of R.C. 2903.211, Ohio's menacing by stalking statute, against him or her. *Warnecke* at ¶ 13, citing *Kramer* at ¶ 14. Similarly, where the petitioner seeks protection of a

-12-

"family or household member" under a CSPO, the petitioner must show by a preponderance of the evidence that the respondent engaged in a violation of R.C. 2903.211 against the "family or household member" to be protected. *See Luikart v. Shumate*, 3d Dist. No. 9-02-69, 2003-Ohio-2130, ¶ 11 (determining that respondent did not engage in a pattern of conduct against petitioner's wife and children, on whose behalf petitioner listed as persons to be protected under the CSPO).

{¶26} R.C. 2903.211 provides, in relevant part:

**(A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.**

Accordingly, pursuant to R.C. 2903.211, the petitioner must establish that the respondent (1) engaged in a pattern of conduct, (2) which he or she knew (3) would cause the person(s) to be protected under the CSPO to believe that he or she will cause him or her physical harm *or* mental distress.

*Pattern of Conduct*

{¶27} Michael first contends that Rory failed to establish that he engaged in a pattern of conduct for the purposes of R.C. 2903.211(A)(1). Upon review of the record, we find that the record contains competent, credible evidence that sufficiently demonstrates that Michael engaged in a pattern of conduct that would

cause Rory and Lorinda to believe that he would cause them physical harm or mental distress.

{¶28} R.C. 2903.211(D)(1) defines pattern of conduct as:

**[T]wo or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents.**

{¶29} Notably, the statute does not define "closely related in time." "In failing to delimit the temporal period within which the two or more actions or incidents must occur, the statute leaves that matter to be determined by the trier of fact on a case-by-case basis." *Ellet v. Falk*, 6th Dist. No. L-09-1313, 2010-Ohio-6219, ¶ 22, citing *State v. Dario*, 106 Ohio App.3d 232, 238, 665 N.E.2d 759 (1st Dist. 1995). In determining whether the actions or incidents described during the CSPO hearing constituted a pattern of conduct the trier of fact should consider the "evidence in the context of all the circumstances of the case." *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, ¶ 10 (12th Dist.), quoting *State v. Honeycutt*, 2d Dist. No. 19004, 2002-Ohio-3490, ¶ 26. Therefore, depending upon the particular circumstances, a pattern of conduct can arise out of two or more actions or incidents occurring on the same day, *Shockey v. Shockey,* 5th Dist. No. 08CAE070043, 2008-Ohio-6797, ¶ 19, citing *State v. Scruggs*, 136 Ohio App.3d 631, 634, 737 N.E.2d 574 (2d Dist. 2000), or it may consist of two or more intermittent actions or incidents occurring over a period of years. *Ellet* at ¶ 25; *see*

*also Middletown* at ¶ 11, and *Berry v. Patrick,* 8th Dist. No. 85255, 2005-Ohio-3708, ¶ 14-15.

**{¶30}** Though we presume the trial court found that Michael engaged in a pattern of conduct against Rory and Lorinda, we note that the trial court, in granting the CSPO, did not enter findings of fact as to which actions or incidents constituted a pattern of conduct. Nevertheless, review of the record reveals that the trial court was presented with four specific incidents between Michael and the Retterers, to wit: the tree-trimming incident; the truck incident; the wedding reception incident; and, the dog barking incident. In addition to those four incidents, the trial court also heard testimony concerning Michael's routine verbal abuse towards Rory and Lorinda. Based on the four incidents and Michael's verbal abuse, Rory maintains that Michael engaged in a pattern of conduct prohibited by R.C. 2903.211(A)(1).

**{¶31}** Of the four incidents testified to during the hearing, we find that the wedding reception incident does not support a finding that Michael engaged in a pattern of conduct that would cause Rory or Lorinda to believe that he was going to cause either of them physical harm or mental distress. Pelphrey, a guest at the wedding reception, testified that he witnessed Michael yelling profanities at guests who parked their vehicles along the portion of the road that abutted the Littles' property. Rory and Lorinda each testified that they did not witness Michael's

actions towards their guests, but were nonetheless aware of Michael's actions. Michael conceded that he yelled at guests who attempted to park their vehicles along the portion of the road that abutted his property, explaining that their vehicles were parked on what he perceived to be his yard. Viewing this incident in its entirety, Michael's actions that day appear to be that of a landowner attempting to prohibit what he perceived to be an unauthorized trespass on his property, and were not directed at the Retterers. Accordingly, we do not find that Michael's actions that day could be construed as causing Rory or Lorinda to believe that Michael was going to cause either of them physical harm or mental distress.

{¶32} Aside from the wedding reception incident, the Retterers testified that in 2006, during a dispute over tree limbs hanging over the Littles' property, Michael came onto the Retterers' property and got "in [Rory's] face" and yelled at him while clinching his fists and making quick movements with his hands (Hearing Tr. Pp. 8, 61); that in 2007 Michael drove his truck towards Lorinda's vehicle as she drove up her driveway; that on April 23, 2011, Michael threatened to kill Rory; and, that Michael has verbally abused them on a routine basis since 2006. In response to each of the foregoing incidents, Michael provided either an innocent explanation for his conduct, a different version of events, or highlighted inconsistencies in the Retterers' testimony in an attempt to discredit the same. As

the trier of fact, the trial court was "free to believe all, part, or none of the testimony of any witness who appear[ed] before it." *Smith v. Wunsch,* 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 22 (4th Dist.). Moreover, while Michael "either refuted or explained each incident alleged by [the Retterers], the trial court determines 'what weight and credibility to afford the appellant's version of the events and the appellee's version of the events.'" *Gruber v. Hart,* 6th Dist. No. OT-06-011, 2007-Ohio-873, ¶ 19, quoting *Wunsch* at ¶ 22. Here, the trial court clearly gave more weight and credibility to the Retterers' version of events. Upon independent review of the record, we cannot say that the trial court erred in giving more weight and credibility to the Retterers' version of events as the record contained competent, credible evidence to support the same.

{¶33} Viewing Michael's conduct towards the Retterers together, we are not persuaded by Michael's contention that the evidence offered at trial was insufficient to establish that he engaged in a pattern of conduct that would cause Rory and Lorinda to believe that he would cause them physical harm or mental distress. First, the record contains evidence of at least two or more "actions or incidents" which caused Rory and Lorinda to believe that Michael was going to cause them physical harm or mental distress. Secondly, though each of the specific incidents occurred over a period of five years, that fact alone does not prohibit a finding that the Michael engaged in a pattern of conduct for purposes of

R.C. 2903.211(A)(1). *See Rosen v. Chesler*, 9th Dist. No. 08CA009419, 2009-Ohio-3163, ¶ 14 (pattern of conduct occurred over two-year period); *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 22 (pattern of conduct occurred over sixteen-year period); *Middletown* at ¶ 11 (pattern of conduct occurred over a four-year period). In determining whether the respondent engaged in a pattern of conduct the court must consider the "evidence in the context of all the circumstances of the case." *Middletown* at ¶ 10. The record reveals that Michael's conduct towards the Retterers was neither random nor remote. Indeed, the specific incidents testified to during the hearing were separated by a year or more. However, Rory and Lorinda testified that during the periods of time between each incident Michael verbally abused them whenever he heard or saw them on their property outside their residence. Considering the evidence in the context of all the circumstances of the case, we find that the trial court did not err when it concluded that Michael engaged in a pattern of conduct for purposes of R.C. 2903.211(A)(1).

*Knowingly*

{¶34} Next, Michael contends that he could not have known that his actions towards the Retterers caused them to believe that he would cause them physical harm or mental distress. Upon review of the record, we find that the record contains competent, credible evidence that sufficiently demonstrates that Michael

-18-

knew that his actions would cause Rory and Lorinda to believe that he would cause them physical harm or mental distress.

{¶35} Knowingly is defined as follows:

**A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.** R.C. 2901.22(B)

Consequently, a petitioner seeking a CSPO under R.C. 2903.214 is not required to prove purpose or intent to cause physical harm or mental distress. *Ellet*, 6th Dist. No. L-09-1313, 2010-Ohio-6219, at ¶ 30.

{¶36} During the hearing, the trial court heard testimony regarding Michael's routine verbal abuse of Rory and Lorinda, as well as three specific incidents, to wit: the tree-trimming incident; the truck incident; and, the dog barking incident. The trial court also heard testimony that the Retterers contacted law enforcement after each incident and that Michael was aware of the same. Though Michael maintains that the he could not have known that the foregoing conduct caused the Retterers to believe that he would cause them physical harm or mental distress, the trial court, based on the nature of the foregoing incidents and the Retterers' response thereto, could reasonably conclude that Michael engaged in a pattern of conduct with knowledge that his conduct caused Rory and Lorinda to believe that he would cause them physical harm or mental distress.

{¶37} Accordingly, we find that the trial court did not err when it concluded that Michael engaged in a pattern of conduct with knowledge that his conduct would cause Rory and Lorinda to believe that he would cause them physical harm or mental distress.

*Belief of Physical Harm or Mental Distress*

{¶38} Last, Michael contends that he neither caused Rory nor Lorinda to believe that he was going to cause them physical harm or mental distress. Upon review of the record, we find that the record contains competent, credible evidence that sufficiently demonstrates that Michael's actions did cause Rory and Lorinda to believe that he would cause them physical harm or mental distress.

{¶39} By its very language, R.C. 2903.211(A)(1) does not require the petitioner to demonstrate that the person(s) to be protected under the CSPO *actually* suffered physical harm or mental distress. *Dayton v. Davis*, 136 Ohio App.3d 26, 32, 735 N.E.2d 939 (2d Dist. 1999). Rather, the petitioner merely has to demonstrate that the respondent knowingly caused the person(s) to be protected under the CSPO to *believe that the respondent would cause* him or her physical harm or mental distress. *Warnecke*, 3d Dist. No. 12-11-03, 2011-Ohio-5442, at ¶ 14.

{¶40} R.C. 2903.211(D)(2) defines mental distress as either of the following:

**(a) Any mental illness or condition that involves some temporary substantial incapacity;**

**(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.**

{¶41} "[M]ental distress for purposes of menacing by stalking is not mere mental stress or annoyance." *Caban v. Ransome,* 7th Dist. No. 08 MA 36, 2009-Ohio-1034, ¶ 29. R.C. 2903.211 requires evidence that the person(s) to be protected under the CSPO developed a mental condition that involved some temporary substantial incapacity or that would normally require mental health services. R.C. 2903.211(D)(2). The statute does not, however, require proof that the victim sought or received treatment for mental distress. *State v. Szloh,* 189 Ohio App.3d 13, 2010-Ohio-3777, 937 N.E.2d 168, ¶ 27 (2d Dist.). Nor does the statute require that the mental distress be totally or permanently incapacitating or debilitating. *See Lias,* 10th Dist. No. 06AP-1134, 2007-Ohio-5737, at ¶ 16. "Incapacity is substantial if it has a significant impact upon the victim's daily life." *State v. Horsley,* 10th Dist. No. 05AP-350, 2006-Ohio-1208, ¶ 48. Thus, testimony that the respondent's conduct caused the person(s) to be protected under the CSPO considerable fear and anxiety can support a finding of mental distress under R.C. 2903.211. *See Horsley* at ¶ 47-48; *Middletown*, 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, at ¶ 8. Additionally, evidence of changed

routine can corroborate a finding of mental distress. *Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, at ¶ 20, citing *Noah v. Brillhart,* 9th Dist. No. 02CA0050, 2003-Ohio-2421, ¶ 16, and *State v. Scott*, 9th Dist. No. 20834, 2002-Ohio-3199, ¶ 14.

{¶42} Though we presume the trial court found that Michael's pattern of conduct caused Rory and Lorinda to believe that he would cause them physical harm or mental distress, we note that the trial court, in granting the CSPO, did not enter findings of fact as to whether Michael's pattern of conduct caused Rory and Lorinda to believe that he would cause them physical harm, mental distress, or both. Nevertheless, review of the record reveals that there was competent, credible evidence that sufficiently demonstrates that Michael's pattern of conduct caused Rory and Lorinda to believe that he would cause them physical harm or mental distress.

{¶43} During the hearing, the trial court heard testimony from Rory and Lorinda concerning their respective beliefs that Michael would cause them physical harm. Rory testified that he believed Michael was going to cause him physical harm as a result of his actions during the tree-trimming incident and the dog barking incident. Considering the nature of the tree-trimming incident and the dog barking incident, it is reasonable to conclude that Rory believed that Michael would cause him physical harm. As for Lorinda, she testified that she believed

Michael attempted to kill her during the truck incident, consequently causing her to believe that Michael was going to cause her physical harm. Although Michael maintains that he did not intend to cause Lorinda to believe that he was going to cause her physical harm, the trial court was free to disbelieve Michael's testimony. Considering the nature of the incident, especially in light of the surveillance video which recorded the incident, it is reasonable to conclude that Lorinda believed that Michael would cause her physical harm.

**{¶44}** The trial court also heard testimony from Rory and Lorinda concerning their respective beliefs that Michael would cause them mental distress. Instead of believing that Michael was going to cause him mental distress, Rory testified that he has suffered mental distress as a result Michael's pattern of conduct. In 2009, Rory took two months off of work and sought counseling as a result of Michael's pattern of conduct, his father's recent death, and Lorinda's illness. Rory also testified that during this period of time he suffered from various maladies, including stress, migraines, and symptoms of IBS. Though Rory's maladies and decision to take time off of work and seek counseling may have, in part, resulted from his father's recent death and Lorinda's illness, as Michael contends, Rory also testified that his maladies and decision to take time off of work to seek counseling was, in part, due to Michael's pattern of conduct. There is no requirement that one's mental distress must solely be attributable to the

respondent's pattern of conduct in order to satisfy the final element of R.C. 2903.211(A)(1). Consequently, we find that a trial court may reasonably conclude that in situations where a person seeking protection under a CSPO testifies that their mental distress was caused, in part, by the respondent's pattern of conduct such evidence is sufficient to establish the final element of R.C. 2903.211(A)(1). As for Lorinda, she testified that Michael's pattern of conduct caused her to live in fear.

**{¶45}** Furthermore, the record contains evidence that Michael's conduct caused Rory and Lorinda to alter their lifestyle. Rory and Lorinda each testified that they only utilize the portion of their yard furthest away from the Littles' property to avoid contact with Michael. Rory testified that he planted trees near the Littles' property line in an effort to minimize contact with Michael. Lorinda testified that she and Rory attempted to sell their residence in 2009 as a result of Michael's conduct, but abandoned the endeavor due to the market value of their residence.

**{¶46}** Considering the foregoing testimony, we find that there is competent, credible evidence that sufficiently demonstrates that Michael's pattern of conduct caused Rory and Lorinda to believe that he would cause them physical harm or mental distress.

{¶47} In light of the foregoing, we find that the trial court did not abuse its discretion when it granted Rory and Lorinda the CSPO. Accordingly, we overrule Michael's first, second, third, and fourth assignments of error.

{¶48} Having found no error prejudicial to Appellant herein, in the particulars assigned and argued, we affirm the issuance of the CSPO, but remand the judgment of the trial court for further proceedings, but only to clarify the mandatory distance of separation between Appellant and Appellee and his wife in the protection order.

**Judgment Affirmed and
Cause Remanded**

**SHAW, P.J. and WILLAMOWSKI, J., concur.**